Guy H. Amason, Jr. Attorney for Iona-McGregor Fire Protection and Rescue Service District
Harry Schooley Lee County Property Appraiser Ft. Myers
QUESTIONS:
1. Is the property appraiser, at the expense of his office, required to furnish to the governing board of the Iona-McGregor Fire District a special assessment roll assessing each parcel of real property within the district under the provisions of Ch. 75-421, Laws of Florida, as amended by Ch. 76-402, Laws of Florida?
2. Is the district obliged to pay and is the property appraiser entitled to be paid for services that he is authorized and required to provide the district by the terms of Chs. 75-421 and 76-402, Laws of Florida?
SUMMARY:
Chapter 75-421, Laws of Florida, as amended by Ch. 76-402, imposes upon the board of commissioners of the Iona-McGregor Fire Protection and Rescue Service District the duty and responsibility as well as the expense of preparing the special assessment roll for the district. Such acts impose upon the Lee County Property Appraiser both the duty of furnishing that part of the county real property assessment roll, or county tax roll, as lists all taxable real property situate within the boundaries of the district and the duty of entering and extending the assessments made by the district's governing board on the county tax roll. The compensation to the property appraiser for the performance of such duties is that provided in Ch. 76-402, which method of compensation or reimbursement is substantially the same as that provided in s. 192.091(1), F. S.
AS TO QUESTION 1:
While these statutes are not models of clarity and the terminology thereof is somewhat ambiguous, upon examination of the whole of Ch. 75-421, Laws of Florida, as amended by Ch. 76-402, Laws of Florida, I am led to the conclusion that the Legislature did not intend, not in terms mandate, that the county property appraiser prepare at his expense and provide without charge to the governing board of the district a special assessment roll assessing each parcel of taxable real property within the district. No provision of the subject statutes empowers the district or its governing board to levy ad valorem taxes; nor is any excise or license tax, which must be authorized by general law, involved. See s. 9, Art. VII, State Const. Section 5(1) of Ch. 75-421 expressly and specifically empowers the district's governing board `to levy special assessments against the taxable real estate within the district to provide funds for the purpose of this district.' The rate of such special assessments `shall be fixed by a resolution of the board as provided in this subsection,' though the maximum rates of assessment are fixed by the Legislature. See s. 5(2), Ch. 75-421. In `making assessment rolls' the governing board of the district is required to consider `size of property, fire hazard, and protection provided.' See s. 5(3), Ch. 75-421. While the making of special assessments is an exercise of the taxing power, such local assessments are not ad valorem or property taxes and are governed by entirely different principles of law. See 29A Fla. Jur. Special Assessments ss. 3, 5, and 6. Cf. Naples v. Moon,269 So.2d 355 (Fla. 1972). The power to levy or make such local or special assessments, or to `assess such assessments' as characterized by s. 6(3) of Ch. 75-421, is not vested by law in the property appraiser. All things having to do with the making of such assessments and the fixing of the rates thereof must be done by the governing board of the district in accordance with the method prescribed by the Legislature in the district's enabling acts.
Section 6(1) of Ch. 75-421 does require the property appraiser to `furnish the commissioners [board of commissioners of the district] a tax roll covering all taxable properties within the district . . . each year.' This `tax roll' obviously is not the `assessment roll' to be made by the `commissioners' referred to in s. 5(3) of Ch. 75-421. Cf. ss. 170.06 and 170.16, F. S., as to the making and contents of certain municipal special assessment rolls and their efficacy to evidence the validity of such special assessments and assessment proceedings. Nor is the tax roll composed of the `assessments made by the board' which the property appraiser is required by s. 6(2) of Ch. 75-421 to `include in the Lee County Tax roll,' or the `special assessments levied and assessed by the district' referred to in s. 7 of Ch. 75-421 which are made a lien upon `the land so assessed along with the county taxes assessed against wuch land . . . until paid.' The `tax roll' referred to in s. 6(1) of Ch. 75-421, is simply so much of the county real property assessment roll (see ss. 193.085, 193.114, and 193.116, F. S.) as lists all of the taxable real property situate within the boundaries of the district. For the purposes of Ch. 75-421, the tax roll is a list of all the real property located in the district which is subject to ad valorem taxation by the statutorily authorized taxing authorities within the county, or any of them, and which will be subject to the levy by the governing board of the district of the `special assessments against the taxable real estate within the district' as the `rate of assessments' fixed by resolution of such board, all as provided in s. 5 of Ch. 75-421. In any event, it is in no sense an assessment roll in the context of special or local assessments and the rules of law governing the making of special assessments or the preparation and efficacy of such assessment rolls. The assessment rolls and the special assessments provided for in Ch. 75-421 are required by the express terms thereof to be made and prepared by the governing board of the district. The property appraiser is not charged by the enabling statute with any duty or responsibility in those regards, and, indeed, the statute does not delegate or grant any authority to the property appraiser to exercise any such powers or to perform such functions. The property appraiser is required, however, to include or enter and extend on the county real property assessment roll (or the county tax roll as it is characterized or referred to following certification by the appraiser) `the assessments made by the board (of commissioners of the district),' i.e. the special assessments levied and assessed by the district, which are collected by the county tax collector along with the county taxes as provided in Ch. 75-421 and enforced as provided by general law for the enforcement of delinquent county taxes.
AS TO QUESTION 2:
Section 6(3) of Ch. 75-421, before its amendment by Ch. 76-402, provided that the property appraiser `shall receive a commission or fee for assessing such assessments of 3 percent . . . insteadof the same commissions or fees usually provided for theassessment . . . of county taxes.' (Emphasis supplied.) The phrase `assessing such assessments,' obviously has reference to `the assessments made by the board' in s. 6(2) of Ch. 75-421 which, by the terms thereof, the property appraiser is required to include in or enter and extend on the county tax roll. Section 6(3) of Ch. 75-421 did not in express terms provide for any commission to the property appraiser for `furnish(ing) the commissioners a tax roll covering all taxable properties within the district.' The statute not having authorized or required any distinct and separate compensation to the appraiser for such services, the rendition of this particular service is deemed to be gratuitous. Gavagan v. Marshall, 33 So.2d 862 (Fla. 1948), and State ex rel. Landis v. Reardon, 154 So. 868 (Fla. 1934). This, in effect, results in the appraiser being compensated for the preparation and furnishing of the `tax roll' required by s. 6(1) of Ch. 75-421 as part of the 3-percent commission `for assessing such assessments' specified in s. 6(3) of Ch. 75-421 `instead' or in lieu of the commissions the appraiser ordinarily would be paid for like services in preparing real property assessment rolls and extending taxes thereon for the county ad valorem taxes. The 3-percent commission fixed by Ch. 75-421, of course, necessarily applies to or is computed on the basis of the aggregate or total amount of special assessments levied by the district and entered and extended on the county tax roll.
Section 6(3) of Ch. 75-421, was amended by Ch. 76-402, which was an act providing, among other things, for `changing . . . the method of reimbursement to the Lee County Property Appraiser for assessing taxes.' See title of Ch. 76-402, Section 2 of Ch. 76-402 changed the method of reimbursement to the property appraiser so that it is substantially identical to that provided for by s.192.091(1), F. S., for compensating the property appraiser for assessing and extending ad valorem taxes on the county tax rull for various local taxing authorities and for certifying such county tax roll to the county tax collector for collection. Services rendered in furnishing the governing board of the district the `tax roll' referred to in and required by s. 6(1) of Ch. 75-421 are now compensated for as a part of the reimbursement prescribed by s. 2 of Ch. 76-402. While both the title and body of Ch. 76-402 refer to reimbursement for `assessing taxes' and to the `district's share of taxes,' it is clear upon examination of all of the provisions of Ch. 75-421, as amended by Ch. 76-402, that the Legislature was addressing itself to the special assessments which the governing board of the district is empowered to levy as provided in s. 5 of Ch. 75-421 and the `assessments by the board' of commissioners of the district required to be included in the county tax roll by the terms of s. 6(2) of Ch. 75-421, and the special assessments enforced as are county taxes under the provisions of s. 7 of Ch. 75-421. It is these special assessments that are collected and the proceeds thereof which are paid over to the governing board (s. 6[2]) and by it deposited in the authorized depository of the district under s. 8 of Ch. 75-421.
Indeed, this construction is clearly in keeping with long-established principles of law relating to statutory construction. In American Bakeries Company v. Haines City,180 So. 524 (Fla. 1938), the court noted that it is `the fundamental rule of construction to which all other rules are subordinate' that the intent of a statute is the law and that intent should be ascertained and effectuated. In State v. Sullivan, 116 So. 255,261 (Fla. 1928), it was stated:
 It cannot be said that chapter 11975 is artistically drawn. It is in fact materially lacking in the attribute of good draughtsmanship, but this does not render it invalid if there can be gleaned from the whole body of the act a clear, definite legislative intent. In statutory construction the Legislative intent is the polestar by which we must be guided, and this intent must be given effect even though it may appear to contradict the strict letter of the statute and well settled canons of construction. The primary purpose designated should determine the force and effect of the words used in the act, and no literal interpretation should be given that lends to an unreasonable or ridiculous conclusion or a purpose not designed by the lawmakers.
In accord see Ervin v. Peninsula Telephone Company, 53 So.2d 647
(Fla. 1951), and Beebe v. Richardson, 23 So.2d 718 (Fla. 1945). Finally, `when the intention can be ascertained with reasonable certainty,' the Florida courts have held that `words may be altered or supplied in the statute so as to give it effect, and to avoid any repugnancy to or inconsistency with such intention.' Haworth v. Chapman, 152 So. 663 (Fla. 1933).
Applying these rules of statutory construction to the legislative intent and purpose as previously ascertained and delineated in this opinion and in order to effectuate such evident intent and objective of the Legislature, I am of the opinion that the Lee County Property Appraiser is neither authorized nor required by Ch. 75-421, as modified by Ch. 76-402, to prepare the special assessment roll for the district or to make special assessments. The property appraiser is required by said acts to furnish to the governing board of the district that portion of the county real property assessment roll, or county tax roll, as lists all taxable real property situate within the boundaries of the district. The property appraiser is additionally required to enter and extend the special assessment made by the district's governing board on the county tax roll. The appraiser is compensated for preparing and furnishing to the governing board of the district that part of the county real property assessment roll, or tax roll, as lists all taxable real property situate within the boundaries of the district, and for entering and extending the assessments made by the district's governing board on the county tax roll as prescribed in Ch. 76-402. Such reimbursement to the property appraiser in both procedure and methodology is substantially the same as that found in s. 192.091, which defines the reimbursement to property appraisers for the inclusion of a taxing authority's ad valorem taxes on the county tax roll.
Prepared by:
Harold F. X. Purnell Assistant Attorney General